**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| SABLE NETWORKS, INC.; SABLE IP, LLC, | |
| *Plaintiffs*, | Civil Action No. 5:20-cv-00120-RWS |
| v. | JURY TRIAL DEMANDED |
| HEWLETT PACKARD ENTERPRISE COMPANY; ARUBA NETWORKS, INC., | **FILED UNDER SEAL** |
| *Defendants*. | |

**DEFENDANTS' MOTION TO TRANSFER TO THE**
**UNITED STATES DISTRICT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**PURSUANT TO 28 U.S.C. § 1404**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD ......................................................................................... 2

III.    DEFENDANTS ARUBA AND HEWLETT PACKARD ENTERPRISE. ...................... 2

IV.     TRANSFER IS REQUIRED IN THIS UNIQUELY CALIFORNIAN CASE. ................. 2

    A.      This Action Could Have Been Brought in NDCA. .............................................. 2

    B.      The Private Interest Factors Favor Transfer to NDCA. ....................................... 2

        1.      Sources of Proof Are Overwhelmingly In NDCA. ..................................... 3

            i.      Defendants' Relevant Documents ███████████ Are in NDCA. ................................................................................... 3

            ii.     HPE's Office in Plano Does Not Contain Trial Evidence. ............. 4

            iii.    Plaintiff's Relevant Documents and Source Code Appear To Be Located in NDCA. ..................................................... 5

        2.      Compulsory Process Is Much More Available in NDCA Than EDTX. ...................................................................................... 6

            i.      Inventors ........................................................................... 7

            ii.     Prosecution Counsel .......................................................... 7

            iii.    Former Caspian Employees ................................................ 8

        3.      Witnesses Can Attend Trial More Easily in NDCA. .................................. 9

            i.      EDTX Is Approximately 1,900 Miles Farther Than NDCA for Inventors, Prosecution Counsel, and Former Caspian Employees. ................................................................. 10

            ii.     Relevant ████ Witnesses Are In Northern California. ............... 10

            iii.    Relevant Sable Witnesses Are In NDCA ................................... 11

        4.      Other Practical Considerations Do Not Weigh Against Transfer. ............ 12

    C.      The Public Interest Factors Favor Transfer. ...................................................... 12

        1.      Time to Trial Is Neutral. .................................................................... 13

        2.      Localized Interests Strongly Favor Transfer to NDCA. ........................... 13

        3.      The Third and Fourth Factors Favor Transfer Because of California Contract Law Issues Related to Defendants' Standing Defense. ...................................................................... 14

V.      TRANSFER IS CONSISTENT WITH RECENT DECISIONS IN THIS DISTRICT AND THE FEDERAL CIRCUIT. ................................................................ 14

VI.     CONCLUSION ................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)..........................................................................7, 13

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. 2013) ....................................................................6

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ..........................................................................9

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
No. 2:13-CV-1112-JRG, 2015 WL 1885256 (E.D. Tex. Apr. 24, 2015) ................9

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..................................................................... *passim*

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
No. 217CV100JRGRSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017) .................3, 5, 9, 13

*In re Google Inc.*,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .............................1, 3, 12

*Hammers v. Mayea-Chang*,
No. 2:19-CV-181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019)
(Gilstrap, C.J.)..........................................................................................................4

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)..............................................................................13

*In re HP Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) .............................1, 3

*In re HP Inc.*,
No. 2020-140, 2020 WL 5523561 (Fed. Cir. Sept. 15, 2020) ........................1, 3, 15

*Interactive Music Tech., LLC v. Roland Corp. U.S.*,
No. 6:07-CV-282-LED-JDL, 2008 WL 245142 (E.D. Tex. Jan. 29, 2008) ...........14

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979).................................................................................................4

*Parus Holdings Inc. v. LG Elecs. Inc.*,
2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)................................................12, 13

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ................................................................3

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..........................................................10

*Uniloc 2017 LLC v. Google LLC*,
    No. 218CV00504JRGRSP, 2020 WL 3064460 (E.D. Tex. June 8, 2020) ...................6, 14, 15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................2, 10

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) .......................................2, 4, 16

**Statutes**

28 U.S.C. § 1404.......................................................................... *passim*

35 U.S.C. § 287................................................................................6

**Other Authorities**

Rule 45(c)......................................................................................15

## I.     __INTRODUCTION__

This case belongs in California. This is a dispute between (a) California-headquartered corporations, (b) over patents purportedly originating from research in California, (c) issued to named inventors who overwhelmingly live in California, (d) conveyed to the plaintiff through California contracts, and (e) regarding accused devices ███████████████████████.

No party has relevant ties to Texas. Plaintiff Sable Networks, Inc. "is a corporation organized and existing under the laws of the State of California." *Complaint*, Dkt. No. 1, at 8 ¶ 13. Sable's purported headquarters, executives, and engineers appear to be located in the Northern District of California within minutes of Defendants' headquarters. Relevant third parties also are in California. Sable alleges it acquired the asserted patents and a related product from Caspian Networks LLC. Caspian is defunct, but its remnants are in California, including former executives and engineers expected to be third-party witnesses. While Hewlett Packard Enterprise Company has an office in Plano, Texas, that is not an Aruba Networks, Inc. office and does not contain sources of proof.

In a case such as this—where no party has relevant ties to Texas, and relevant party and third-party ties to California are overwhelming—transfer is both appropriate and mandatory. The facts of this case favor transfer even more than the facts of *In re Google* and *In re HP I*, where the plaintiff had an employee or kept an office in Texas. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018). "Given … HP's presence in the transferee venue, and no readily apparent connection with the Eastern District of Texas," "this is one of those cases" where transfer is required. *In re HP Inc.*, No. 2020-140, 2020 WL 5523561, at *2 (Fed. Cir. Sept. 15, 2020). Thus, Defendants respectfully request transfer to NDCA under 28 U.S.C. § 1404.

__DEFENDANTS' MOTION TO TRANSFER__ – Page 1

## II.   <u>LEGAL STANDARD</u>

Under Fifth Circuit law, which governs the 28 U.S.C. § 1404 transfer inquiry in this case, the threshold question is whether the suit could have been brought in the proposed transferee district. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Fifth Circuit instructs courts to consider several private and public interest factors to determine whether the transferee forum would be "clearly more convenient" than the transferor court, applying the private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

## III.   <u>DEFENDANTS ARUBA AND HEWLETT PACKARD ENTERPRISE</u>

Aruba Networks, Inc. ("Aruba") is a Silicon Valley networking company founded in Sunnyvale, California in 2002 and is currently headquartered in Santa Clara, California. *See* Declaration of Karthikeyan Ramachandran ("Ramachandran Decl."), Ex. 1, ¶ 4. Aruba employs over 7,000 employees globally. ███████████████████████████████████ ████████████████████████████████. *See id*. at ¶¶ 4, 8–9. In 2015, Aruba was acquired by, and is a wholly-owned subsidiary of, Hewlett Packard Enterprise ("HPE"). *Id*. at ¶ 3. Aruba does not have any offices in Texas. *Id*. at ¶ 11. The Accused Devices in this case are sold by Aruba, not HPE.

## IV.   <u>TRANSFER IS REQUIRED IN THIS UNIQUELY CALIFORNIAN CASE</u>

### A.   **This Action Could Have Been Brought in NDCA**

As an initial mater, this suit could have been brought in NDCA because both Defendants are headquartered there. *See Complaint*, Dkt. No. 1, at 9 ¶ 17–18.

### B.   **The Private Interest Factors Favor Transfer to NDCA**

In this case, the four private factors favor transfer. "[T]he case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case…are in the

transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013). Given the overwhelming sources of party and non-party proof and witnesses located in Northern California, all parties' headquarters in NDCA, and plaintiffs' lack of ties to Texas, Federal Circuit law compels transfer. *See In re Google,* 2017 WL 977038; *In re HP I*, 2018 WL 4692486; *In re HP II*, 2020 WL 5523561.

### 1.    Sources of Proof Are Overwhelmingly In NDCA

#### i.    Defendants' Relevant Documents ██████████ Are in NDCA

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). "The Court presumes the bulk of discovery material relating to [the accused infringer] is at its corporate headquarters." *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 217CV100JRGRSP, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017).

Both HPE and Aruba are headquartered in NDCA—in San Jose and Santa Clara, respectively—which triggers the presumption that "the bulk of discovery material" will be in these locations. *See Complaint*, Dkt. No. 1, at 9 ¶ 17–18. The Complaint identifies five classes of products: the Aruba Switch Series, the HPE FlexNetwork Router Series, HPE FlexFabric Switches, Aruba Gateways, and Aruba Mobility Controllers product families (collectively, "the Accused Devices"). *See Complaint*, Dkt. No. 1, at 21 ¶ 86, 25 ¶ 106, 29 ¶ 127, 33 ¶ 151, 36–37 ¶ 171. The HPE FlexNetwork and FlexFabric devices ██████████ ██████████ ██████████ and are sold by Aruba (the "█ ██████ Devices"). Ramachandran Decl, ¶¶ 6–7. ██████████ ██████████ ██████████ . Ramachandran

Decl., ¶ 12. As in *In re Genentech*, "all of [Defendants'] corporate documents relating to the development, manufacturing, and marketing of the accused infringing products are housed in [Defendants' NDCA] headquarters." 566 F.3d at 1345. ████████████████████████████
████████████ *Id.* ¶ 12. Except for the ███████████ Devices, the ████████ ████████
████████████████████████████████████████████████████. *Id.* ¶ 14. ██
████████████████████████████████████████████████ *Id*. These sources of proof bear centrally on core disputed issues in the case, including alleged direct and indirect infringement. Because they are located primarily in Northern California and not in Texas, this factor heavily favors transfer.

ii.     **HPE's Office in Plano Does Not Contain Trial Evidence**

HPE's office in Plano, Texas, which is identified by Sable in the Complaint, is irrelevant to the § 1404 analysis because it is not a source of trial proof. *Cf. Complaint*, Dkt. No. 1, at 9 ¶ 19 (identifying HPE's facility). To be clear, the office located at 6080 Tennyson Parkway in Plano, Texas, is an HPE office and not an Aruba office. Ramachandran Decl., ¶ 11. Furthermore, all of the Accused Devices identified in the Complaint fall within the Aruba organization, rather than HPE's. *Id.* ¶¶ 6–7. Regardless, unlike a § 1406 analysis, which may generally consider a defendant's "regular and established place of business" within the District, the § 1404 inquiry is "***only*** focused on evidence that will be used ***at trial***." *Hammers v. Mayea-Chang*, No. 2:19-CV-181-JRG, 2019 WL 6728446, at *7 (E.D. Tex. Dec. 11, 2019) (emphasis added) ("[T]he inquiry regarding access to sources of proof correlates to production and presentation to the jury ***at trial***." (citing *Volkswagen II*, 545 F.3d at 316; *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979))).

As a result, if a proponent "does not explain how a particular source of proof will be used at trial," then the uniform practice in this District is not to consider it in the § 1404 inquiry. *Id.*

(refusing to consider "generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence to be presented at trial"); *Godo Kaisha*, 2017 WL 4076052, at *1, *5 (granting transfer notwithstanding defendant's "sales offices" in Texas because plaintiff "fail[ed] to identify any specific witnesses or evidence within this District" at those offices while the defendant specifically "identified a number of party witnesses residing in Northern California").

Sable will not be able to tie HPE's facility in Plano to this litigation, let alone to trial, because it does not contain sources of trial evidence. ██████████████████████████ ████████████████████████████████████████████████. Ramachandran Decl., ¶¶ 12–14. The mere existence of an HPE facility in this District is not enough—without a more particularized showing—to impact this factor.

### iii. Plaintiff's Relevant Documents and Source Code Appear To Be Located in NDCA

Based upon public information, relevant Sable documents appear to be located in California, at least presumptively. *Godo Kaisha*, 2017 WL 4076052, at *3 (presuming the bulk of corporate documentary evidence is located at corporate headquarters). The Complaint states that Sable is a California corporation. *Complaint*, Dkt. No. 1, at 8 ¶ 13. California state records show that Sable is headquartered in NDCA at 3171 Jay St., Santa Clara, California. *See* Exs. 2–4.

As described under the next factor, NDCA is home to several Sable employees who work on products that the Complaint identifies as related to the Asserted Patents. *Complaint*, Dkt. No. 1, at 6 ("Sable Networks, Inc. continued the product development efforts stemming from Dr. Roberts' flow-based router technologies."); *id*. at 4–5 ¶ 5, 6, (describing the Sable "Apeiro" as "a flow-based router" related to the Asserted Patents). "All source code and design documentation" for Apeiro appear to have been delivered to Sable in California as part of the patent purchase

agreement. *See* Ex. 5 at Frame 0919 (transferring Apeiro source code and "source files pertaining to the development, design, document registry and technical publications" for Sable ASICs). To the extent these products practice the Asserted Patents, they may bear upon damages, marking under 35 U.S.C. § 287, and secondary considerations of non-obviousness.

Sable also may possess inventorship documents within NDCA. The Complaint alleges the Asserted Patents were invented by employees of Caspian Networks Inc. before Caspian liquidated its assets and allegedly sold them to a Korean corporation called Mobile Convergence, Ltd. ("MCL"). Ex. 6. MCL later allegedly agreed to transmit to Sable's California office "[a]ll relevant invention records," "including blue prints [*sic*], white papers, engineer notebooks and related materials pertinent to the list of acquired assets." *See* Ex. 5 at Frame 0922. These "invention records" are important sources of proof related to conception, diligence, and reduction to practice.

### 2.    Compulsory Process Is Much More Available in NDCA Than EDTX

"'Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses' than the transferor district." *Uniloc 2017 LLC v. Google LLC*, No. 218CV00504JRGRSP, 2020 WL 3064460, at *4 (E.D. Tex. June 8, 2020) (quoting *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013)). "The fact that the transferee venue is a venue with usable subpoena power … weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345. The non-party witnesses who are likely central to the disputes in this case—including the inventors, prosecution counsel, and former Caspian employees—are almost uniformly located in California, and nearly all within the subpoena power of NDCA. Conversely, none appears to be located within the EDTX subpoena power.

### i. Inventors

As shown below, seven of the nine living named inventors are within the subpoena power of NDCA. None are within subpoena power for EDTX. *See* Ex. 7.

| Patent # | Inventor Name | Current Location | Within NDCA Subpoena Power | Within EDTX Subpoena Power |
|---|---|---|---|---|
| 7,012,919 | Faizel Z. Lakhani | San Francisco, CA | **Yes** | No |
| | John A. McBrayne | San Jose, CA | **Yes** | No |
| | Gary G. Croke | San Jose, CA | **Yes** | No |
| | Tricci Y. So | Oceanside, CA | **Yes** | No |
| 8,085,775 and 8,817,790 | Surya K. Pappu | Milpitas, CA | **Yes** | No |
| | Paul Jezioranski | Research Triangle Park, NC | No | No |
| | Sharad R. Murthy | Menlo Park, CA | **Yes** | No |
| 8,243,593 | Vishnu Natchu | Mountain View, CA | **Yes** | No |
| 6,977,932 | Scott Hauck | Seattle, WA | No | No |

### ii. Prosecution Counsel

The prosecution firms for all Asserted Patents are located within NDCA. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (identifying prosecution counsel as important witnesses). Prosecution counsel listed on the face of the '932 Patent and the '919 Patent was Martine Penilla & Gencarella, LLP (now named Penilla IP, APC), headquartered in NDCA in Sunnyvale, CA. *See* Exs. 8–9. Prosecution counsel listed on the face of the '775 Patent, the '532 Patent, and the '790 Patent was West & Associates, PC, headquartered in NDCA in Walnut Creek, CA. *See* Ex. 10. The lead prosecuting attorney listed on the face of these latter three patents, Stuart J. West, remains at the same firm and is a resident of NDCA. *See* Ex. 11.

### iii.     Former Caspian Employees

Sable's Complaint goes on at length to describe that the Asserted Patents are purportedly the result of the "technologies developed by Dr. Roberts and Caspian Networks." *Complaint*, Dkt. No. 1, at 5 ¶ 8; *id.* at 1–2 ¶ 1. Accordingly, former Caspian employees may be relevant to questions of conception, reduction to practice, diligence, damages generally, marking specifically, and secondary considerations of non-obviousness. *See id.* at 5 ¶ 8 & n.8 ("Sable Networks, Inc. was formed … to further develop and commercialize the flow-based networking technologies developed by Dr. Roberts and Caspian Networks."). Based on publicly available documents, the following witnesses are former Caspian employees located in NDCA. Their former positions of authority, job responsibilities, and duration at Caspian make them potential trial witnesses. *See* Ex. 12.

| Name | Former Role(s) | Trial Contribution | Current Location | Within NDCA Subpoena Power | Within EDTX Subpoena Power |
|------|----------------|--------------------|------------------|----------------------------|----------------------------|
| Brad Wurtz | "President and CEO" at Caspian | All issues. | San Francisco, CA | **Yes** | No |
| Geoffrey Mattson | "Vice President of Engineering" at Caspian **_and_** "Chief Technical Officer and Founder" at Sable. | All issues. | Mountain View, CA | **Yes** | No |
| Douglas Luftman | "Vice President, General Counsel and Secretary of Caspian" | Ownership, Damages (Licensing). | San Francisco, CA | **Yes** | No |
| Riad Hartani | "Chief Architect at Caspian (acquired by Sable), building Internet backbone routers." | Conception, Reduction to Practice, Diligence, Infringement, Marking (Apeiro) | San Francisco, CA | **Yes** | No |
| Raul Herrera | "Senior Hardware Engineer" at Caspian for 8.5 years **_and_** | Conception, Reduction to Practice, | Newark, CA | **Yes** | No |

| Name | Former Role(s) | Trial Contribution | Current Location | Within NDCA Subpoena Power | Within EDTX Subpoena Power |
|------|----------------|--------------------|--------------------|------------------------------|------------------------------|
|  | "Senior Hardware Engineer" at Sable for 11 years | Diligence, Infringement, Marking (Apeiro + S-Series). |  |  |  |

In sum, the locus of the aforementioned inventors, prosecution counsel, and former Caspian employees within NDCA heavily weighs in favor of transfer of this case to NDCA. *In re Genentech* is on all-fours in this respect: "As noted above, there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas. The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." 566 F.3d at 1345.

### 3.    Witnesses Can Attend Trial More Easily in NDCA

"While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 1885256, at *8 (E.D. Tex. Apr. 24, 2015). Further, "this factor weighs *heavily* for transfer when far more third-party witnesses reside in the transferee venue than the transferor venue." *Godo Kaisha*, 2017 WL 4076052, at *4 (citing *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)) (emphasis added).

"Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100–mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses

increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204–05).

         **i.**         **EDTX Is Approximately 1,900 Miles Farther Than NDCA for Inventors, Prosecution Counsel, and Former Caspian Employees**

      As set forth in Section III.B.2, most inventors, prosecution counsel, and relevant former Caspian employees are located within NDCA, predominantly either within San Francisco or in nearby cities within NDCA (such as San Jose, Mountain View, and Menlo Park). Conversely, the distance between the federal courthouses in NDCA (San Francisco, San Jose, and Oakland) and Texarkana, TX is approximately 1,900 miles. Accordingly, this factor heavily favors transfer.

         **ii.**         **Relevant ▮▮▮▮ Witnesses Are In Northern California**

      Based upon the infringement allegations in Sable's Complaint, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ramachandran

Decl., ¶ 8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 9. In addition to Declarant Karthik Ramachandran, likely relevant Northern California-based witnesses and their knowledge include:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



In addition, Sable's Complaint names 13 current and former HPE and Aruba employees in support of its infringement allegations. *See Complaint*, Dkt. No. 1, at 23–24 ¶ 100 n.19; *id.* at 32 ¶ 145 n.21; *id.* at 35 ¶ 165 n.22; *id.* at 38–39 ¶ 186 n.23. Of the 13 people identified, 10 are in California, with seven located in NDCA. Chessman Decl. ¶ 22; Ex. 13. None are in Texas. *Id.* Accordingly, even by Sable's Complaint, most witnesses are located in California and in NDCA.



. *See* Ramachandran Decl., ¶ 15. None of those employees have knowledge or information that would make them potential trial witnesses. *Id.* . Accordingly, NDCA is more convenient for Defendants' witnesses.

### iii.    Relevant Sable Witnesses Are In NDCA

Given that Sable is based in NDCA, it is unsurprising that relevant Sable witnesses appear to live in or near its Santa Clara, CA headquarters. An important trial witness appears to be Mr. Sanjay Oza, who is Sable's registered corporate agent in California and has worked at Sable for 13 years. *See* Ex. 14 (listing Mr. Oza); Ex. 3 (most recent Sable filing confirming no change); Ex. 15 (showing years). Before that, he worked for Caspian for six years. *See* Ex. 15. As the "Engineering Director" at Sable since November 2006, Mr. Oza describes his own extensive role

managing "Hardware Projects" and "Software Projects" related to "routing," "network infrastructure," and a "hierarchical tunneling mechanism" used "to provide network partitioning." *Id.* Mr. Oza also "Create[s] and manage[s] yearly budget for the entire company operations" at Sable. *Id.* Mr. Oza's public statements reflect that Sable has "10–12 full time engineers" and "6–8 contractors." *Id,.* Consistent with that description, public indexes on LinkedIn identify 14 Sable employees, including eight located in the United States, seven located in the San Francisco Bay Area, and none located in Texas. *See* Ex. 16–17. The remaining employees located in India, Korea, Saudi Arabia, and Japan do not materially alter the transfer analysis. *Cf.* Ex. 16. Accordingly, NDCA appears to be more convenient for Sable's witnesses.

### 4.    Other Practical Considerations Do Not Weigh Against Transfer

Co-pending cases in this District do not support transfer for at least three reasons. First, defendants in each co-pending case in this District have moved to transfer to NDCA under § 1404. *Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020) (finding "the presence of co-pending litigation is neutral" because "the Court must also consider the presence of co-pending motions to transfer"). Second, the sole fact of co-pending cases cannot defeat transfer. *In re Google*, 2017 WL 977038, at *2 (rejecting "the mere co-pendency of related suits in a particular district" as adequate basis to deny transfer where the defendant "has a strong presence in the transferee district" and no other factors favor retention). Third, this case is in its early stages. *Parus*, 2020 WL 4905809, at *7 ("[A]ny increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited.").

### C.    The Public Interest Factors Favor Transfer

Three of the four public interest factors favor transfer because of the threshold issues of California law are bound up in Sable's patent claims. The final factor—time to trial—is neutral.

### 1.      Time to Trial Is Neutral

While time to trial is a factor in the transfer analysis, "speed … should not alone outweigh all [other] factors." *In re Genentech*, 566 F.3d at 1347. Here, this factor is neutral. For cases that proceed to trial, NDCA has a comparable median time to trial. According to Docket Navigator, the all-time median time to trial in patent cases in NDCA has been 875 days compared with 878 days in EDTX. *See* Ex. 18. For patent cases with trials conducted in 2019, the median time to trial in NDCA was 613 days compared with 712 days in EDTX. *See* Ex. 19.

### 2.      Localized Interests Strongly Favor Transfer to NDCA

A forum has a "strong" local interest when a "cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Accordingly, this factor "strongly favors transfer" if "[t]he company asserting harm and many of the companies alleged to cause that harm are all residents of that [transferee] district, as are the inventor and patent prosecuting attorneys whose work may be questioned at trial." *In re Acer Am.*, 626 F.3d at 1256; *accord Godo Kaisha*, 2017 WL 4076052, at *5 (explaining that "this factor should be weighed in [the transferee] venue's favor" when both plaintiffs and defendants "are all residents of that district"). In this case, NDCA has all four of the relevant local interests identified by *In re Acer*. First, all parties are headquartered in California. Second, ███████████████████████████████ ███████████████████████████████████████████; similarly, Sable's current and former employees who worked on allegedly patent-practicing products, like the Apeiro, also appear to be located in NDCA. Third, seven of nine living inventors are in NDCA. Fourth, patent prosecution counsel is headquartered in NDCA. Conversely, EDTX presents no comparable local interest. Accordingly, this factor strongly favors transfer.

3.     **The Third and Fourth Factors Favor Transfer Because of California Contract Law Issues Related to Defendants' Standing Defense**

The third and fourth factors favor transfer. Defendants' affirmative defense that Sable lacks standing to sue for infringement will depend upon issues of California contract law that determine what patent rights were allegedly transferred and to whom. The agreement that purports to assign all five Asserted Patents to Sable includes a California choice of law provision. *See* Ex. 6 § 8. Another agreement allegedly transferring the patents from Caspian to a person in Korea is also a California contract. *See* Ex. 5 at Frame 0832 ("this Assignment of Patent Rights is executed at Santa Clara on 8/14/08" before a California notary public). The interpretation of these contracts under California law will determine whether Sable obtained the patent rights it claims to possess. The third and fourth private interest factors favor transfer as a result. *Interactive Music Tech., LLC v. Roland Corp. U.S.*, 2008 WL 245142, at *9 (E.D. Tex. Jan. 29, 2008) (transferring patent case involving California contract issues and explaining "Central District of California judges" will "be better versed in applying California law").

V.     **TRANSFER IS CONSISTENT WITH RECENT DECISIONS IN THIS DISTRICT AND THE FEDERAL CIRCUIT**

Transfer is consistent with recent decisions in this District. *Uniloc*, 2020 WL 3064460, at *2 (granting § 1404(a) transfer). Despite the existence of "few documents … in either district" having "little relevance," and the plaintiff's place of business in Tyler, Texas, the court in *Uniloc* transferred the case because the defendant "ha[d] shown that far more witnesses in this case, both party and non-party, are in the Northern District [of California]." *Id.* at *6. The court concluded:

> [K]eeping the Fifth Circuit's 100-mile rule in mind, Google has shown that far more witnesses in this case, both party and non-party, are in the Northern District or close to it. This is not just a matter of numbers but also of substance as well. Google's supplement also shows that these identified witnesses are more likely to attend trial, making the need to consider their convenience more important … Google has made a credible showing that the Northern District

would have subpoena power over many of the identified witnesses
pursuant to Rule 45(c).

*Id.* at *6. As in *Uniloc*, Defendants have identified a number of material party and non-party witnesses who reside in NDCA, and has shown that NDCA has subpoena authority over many of them. And unlike *Uniloc*, Sable is based in California and not Texas, many relevant documents are in California, and issues of California law will bear upon whether Sable has standing to bring this suit. Each of these facts further support transfer to NDCA.

Transfer is also consistent with the Federal Circuit's recent decision *In re HP II*. 2020 WL 5523561, at *3. As in this case, *HP II* involved "several witnesses in the Northern District of California that could testify at trial" and no such witnesses in EDTX. However, in *HP II*, the plaintiff was a foreign corporation, most documents were located abroad (not in EDTX or NDCA), and EDTX had some subpoena power over third parties. By contrast, this case involves three California corporations, with most documents located in NDCA, and with subpoena power available in NDCA and not EDTX. *Id.* This case also involves California law. Given *In re HP II*, transfer of this case to NDCA is warranted by even stronger facts.

## VI.  CONCLUSION

In this uniquely California-based dispute, six of the eight factors favor transfer to NDCA, two factors are neutral, and no factor disfavors transfer. Granting transfer under the unique facts of this case would not expand the law of § 1404 or alter the ordinary course of proceedings for future cases in this District. Conversely, given the lopsided posture of the transfer factors leaning towards Northern California, denial of this motion would produce a "patently erroneous result." *Volkswagen II*, 545 F.3d at 311, 318. For these reasons, Defendants respectfully request transfer to NDCA under 28 U.S.C. § 1404.

Respectfully submitted,

*/s/  Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
J. Randy Roeser
Texas Bar No. 24089377
HALTOM & DOAN
6500 Summerhill Rd., Suite 100
Texarkana, TX 75503
Phone: 903.255.1000
Fax: 903.255.0800
Email: jdoan@haltomdoan.com
Email: rroeser@haltomdoan.com

Sean C. Cunningham (*admitted pro hac vice*)
sean.cunningham@us.dlapiper.com
Erin Gibson (*admitted pro hac vice*)
erin.gibson@us.dlapiper.com
Tiffany Miller (*admitted pro hac vice*)
tiffany.miller@us.dlapiper.com
David R. Knudson (*admitted pro hac vice*)
david.knudson@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Phone: 619.699.2700
Fax: 619.699.2701

Christian Chessman
christian.chessman@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Phone: 650.833.2000
Fax: 650.833.2001

**ATTORNEYS FOR DEFENDANTS
HEWLETT PACKARD ENTERPRISE
COMPANY AND ARUBA NETWORKS,
INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 30th day of September, 2020.

/s/ *Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on September 30, 2020, Randy Roeser, counsel for Defendants HPE and Aruba, met and conferred with Elizabeth DeRieux, counsel for Plaintiff. Plaintiff is opposed to the relief requested.

/s/ *Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that, pursuant to Local Rule CV-5(a)(7), the foregoing document contains confidential information under the Court's Protective Order entered in this case [Dkt. No. 35] and as such, is filed under seal.

/s/ *Jennifer H. Doan*
Jennifer H. Doan